IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID NEKULA, | ) | Civil Action No. 10-1180 |
| | ) | |
| Plaintiff, | ) | Judge David S. Cercone |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| MICHAEL J. BANOVSKY, in his | ) | |
| individual capacity, MAURICIO | ) | |
| JIMENEZ, in his individual capacity, | ) | |
| GREG DREWS, in his individual capacity, | ) | |
| ANTHONY J. BARRAVECHIO, in his | ) | |
| individual capacity, JOHN DOE, INC., and | ) | Re: ECF No. 19 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Defendants' Partial Motion to Dismiss or, in the alternative, for Summary Judgment at ECF No. 19 be granted in part and denied in part. The Partial Motion to Dismiss is granted as it relates to the tort claims against the United States, and as it relates to the claims against the John Doe corporate defendant. It is denied as it relates to the claims for supervisory liability against Defendants Drews and Jimenez, conspiracy against all individual Defendants, and improper service of process as to Defendant Barravechio.

## II. REPORT

A. Relevant Facts

On September 7, 2010, Plaintiff David Nekula ("Plaintiff" or "Nekula"), proceeding pro se, filed this civil action against Defendants Michael J. Banovsky ("Banovsky"), Mauricio Jimenez ("Jimenez"), Greg Drews ("Drews"), Anthony J. Barravechio ("Barravechio"), all in

their individual capacities, (collectively "individual Defendants") and against John Doe, Inc. ("federal corporate defendant"). On February 28, 2011, this Court entered an order granting Defendants' Motion to Substitute the United States as the defendant with respect to Plaintiff's tort claims for all further proceedings. (ECF No. 21.) Consequently, the tort claims against the individual Defendants were dismissed with prejudice, and the United States was substituted as the defendant with respect to these claims.

Plaintiff's claims arise out of a September 24, 2008 undercover enforcement operation conducted by the Drug Enforcement Administration ("DEA") in Pittsburgh, Pennsylvania. Plaintiff's Complaint includes 146 paragraphs of factual averments detailing the facts and circumstances giving rise to his alleged injuries. The Court summarizes the relevant factual averments as follows.

Plaintiff avers that all Defendants present on the day of the buy/bust of the target were DEA agents and officers from several other law enforcement agencies, all working for the DEA. (Complaint, ECF No. 3 at ¶¶ 1-2.) Plaintiff was with the group for almost two (2) hours as they prepared for the buy/bust of the target. (ECF No. 3 at ¶ 4.) Drews was the Group Supervisor. (ECF No. 3 at ¶ 3.) Plaintiff alleges that Jimenez, who was also acting in a supervisory capacity, instructed all agents/officers to become familiar with Plaintiff's identity, including the clothes he was wearing at the time. (ECF No. 3 at ¶ 9.) Jimenez informed Plaintiff that he would be filming the buy/bust. (ECF No. 3 at ¶ 10.) Plaintiff avers that at one point, Banovsky became annoyed with Plaintiff because of a joke Plaintiff directed to Banovsky. (ECF N0. 3 at ¶¶ 5-8.)

Plaintiff alleges that Barravechio coached him to get down on the ground when instructed as both Plaintiff and Barravechio were going to be arrested as a ruse. (ECF No. 3 at ¶ 11.) When the targets of the buy/bust arrived, Banovsky rushed past the targets, Barravechio dropped

to the ground, and Banovsky "rush tackled" Plaintiff. (ECF No. 3 at ¶¶ 12-17.) Plaintiff avers that Banovsky slammed him to the ground, pinned his left arm underneath him, and slammed Plaintiff's head on the ground. (ECF No. 3 at ¶¶ 18-19.) Plaintiff alleges that Banovski retrieved a transmitter that Plaintiff carried in his pocket so that it was visible to the target; Banovski then placed the transmitter into another of Plaintiff's pockets. (ECF No. 3 at ¶ 21.) As a result of the above, Plaintiff's glasses were smashed and bent. (ECF No. 3 at ¶ 22.) In addition, his mouth, face, and elbow were bleeding and his skull and neck "hurt badly." (ECF No. 3 at ¶ 25.) After the target left the scene, Plaintiff and Banovsky shouted at one another. (ECF No. 3 at ¶ 26.) Plaintiff alleges that this argument, as well as the events described above, should have been recorded by the transmitter. (ECF No. 3 at ¶ 27.)

Plaintiff further avers that although Drews apologized to Plaintiff several times for his injuries and admitted that the agents made mistakes, Banovsky indicated that he was not sorry and would not apologize. (ECF No. 3 at ¶¶ 29-30.) Plaintiff then avers that when "they realized that the transmitter in Plaintiff's pocket was still on, they panicked, retrieved it quickly and turned it off." (ECF No. 3 at ¶ 31.) Plaintiff also contends that "Jimenez's video should have captured the entire episode" and the transmitter recording should contain an audio recording of all that occurred. (ECF No. 3 at ¶¶ 32-33.)

Barravechio and Drews took Plaintiff back to a motel after Plaintiff declined a state troopers' offer to call an ambulance. (ECF No. 3 at ¶¶ 34-35.) Thereafter, Plaintiff avers that he developed blurred vision, nausea, and his head began to swell. (ECF No. 3 at ¶ 37.) After Jimenez refused his request to go to an emergency room, Barravechio arrived several hours later and drove Plaintiff to the hospital. (ECF No. 3 at ¶¶ 39-40.) Plaintiff alleges that Barravechio discouraged Plaintiff from going to the hospital and indicated that if he did, it would "make

matters worse for him in his pending federal case." (ECF No. 3 at ¶¶ 41-43.) Plaintiff alleges that Drews promised that DEA would pay all of Plaintiff's medical bills, but DEA has not, and Plaintiff has been unable to pay his outstanding bills. (ECF No. 3 at ¶¶ 47-48.)

Plaintiff avers that at the time of his federal criminal case, the judge ordered an independent medical investigation, an investigation into the assault, and a General Investigation Report was produced at the time of Plaintiff's sentencing. (ECF No. 3 at ¶¶ 49-52.) Plaintiff alleges that the report of the investigation conducted by the Bureau of Integrity and Professional Standards concerning Banovsky was "fraught with lies." (ECF No. 3 at ¶¶ 52-53.) Plaintiff alleges in great detail statements in the report made by Banovsky, Barravechio, Drews, and Jimenez that Plaintiff contends are lies for the purpose of covering up the wrongdoing of Banovsky during the buy/bust operation. (ECF No. 3 at ¶¶ 54-69, 71-76, 78-84, 87-124, 126-145. Plaintiff further alleges that none of the recordings, either audio or video, were produced for the corporal doing the investigation. (ECF No. 3 at ¶¶ 70, 77, 125.) Finally, Plaintiff alleges that "[o]n or before the date of the internal affairs investigation, all individual defendants conspired to tell consistant [sic] lies to cover for Banovsky's brutal assault and to deprive Plaintiff of redress, in violation of 42 U.S.C. § 1983." (ECF No. 3 at ¶ 146.)

Liberally construing the pro se Complaint, Plaintiff's claims as to each Defendant are as follows:

<u>Banovsky</u>: *Bivens* claim for excessive force[1]; "conspiracy to lie" or to cover-up Banovsky's alleged unconstitutional conduct pursuant to 42 U.S.C. § 1983[2]; and tort claims for assault, battery, and intentional infliction of emotional distress[3].

---

[1] Plaintiff's complaint states that Banovsky acted "under color of *State* law" but the Court, as well as Defendants, liberally construes this claim as stating a *Bivens* action. (Complaint, ECF No. 3 at Claims, ¶ (i)) (emphasis added); *see* Brief in Support of Defendants' Partial Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 20 at 4.

4

Drews: failure to supervise Banovsky; "conspiracy to lie" or to cover-up Banovsky's alleged unconstitutional conduct; and tort claims for negligent supervision and intentional infliction of emotional distress.

Jimenez: failure to supervise Banovsky; "conspiracy to lie" or to cover-up Banovsky's alleged unconstitutional conduct; and tort claims for negligent supervision and intentional infliction of emotional distress.

Barravechio: "conspiracy to lie" or to cover-up Banovsky's alleged unconstitutional conduct; and a tort claim for intentional infliction of emotional distress.

John Doe, Inc.: failure to supervise; and intentional infliction of emotional distress.

B. Legal Standards

PRO SE PLEADINGS

The court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). In addition, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).

---

[2] The Court liberally construes the conspiracy claims under *Bivens. See infra* text at pp. 13-14 and accompanying note.
[3] As noted above, the United States has been substituted as a party as to all tort claims against the individual Defendants, and these claims against the individual Defendants have been dismissed with prejudice. (ECF No. 21.)

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Defendants assert a factual challenge. The factual challenge attacks the court's very power to hear the case; the court need not consider the allegations of the complaint as true. *Mortensen*, 549 F.2d at 891. Instead, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The plaintiff carries the burden of proof that jurisdiction exists. *Id.*

In support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Defendants argue that Plaintiff's FTCA claims are barred by the Federal Employees Compensation Act, 5 U.S.C. § 8101, *et seq.* ("FECA").

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6

*Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show

> that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of the Motion to Dismiss pursuant to Rule 12(b)(6), Defendants argue that Plaintiff has failed to state a claim against Defendants Drews and Jimenez because the Complaint contains no averments that they personally participated in the alleged unconstitutional conduct. Defendants also argue that Plaintiff has failed to make out a § 1983 conspiracy claim. Finally, Defendants also argue that Plaintiff may not maintain a *Bivens* action against a federal agency, the corporate John Doe Defendant.

MOTION TO DISMISS PURSUANT TO RULE 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may ask the court to dismiss a complaint when a plaintiff has failed to properly serve the defendant with the summons and complaint. "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted).

In support of their Motion to Dismiss Defendant Barravechio for insufficient service of process, Defendants contend that Barravechio has not received personal service of the Summons and Complaint, nor has he been asked to waive personal service.

8

C. <u>Analysis</u>

1. <u>FTCA claims</u>

As noted above, on February 28, 2011, this Court entered an order granting Defendants' Motion to Substitute the United States as the defendant with respect to Plaintiff's tort claims for all further proceedings. (ECF No. 21.) Consequently, the tort claims against the individual Defendants were dismissed with prejudice, and Plaintiff's tort claims remain only as to the United States. The United States argues that the Court lacks subject matter jurisdiction because Plaintiff's claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), are barred by the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA").[4]

FECA is an exclusive and comprehensive workers' compensation plan for federal government employees and provides in relevant part as follows:

> The United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is (1) caused by willful misconduct of the employee; (2) caused by the employee's intention to bring about the injury or death of himself or of another; or (3) proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8102 (a). FECA's remedies are exclusive of all other remedies against the United States for job-related injury or death. 5 U.S.C. § 8116 (c). Under FECA, federal government employees thereby lose their right to sue the government in exchange for the guaranteed right to receive immediate, fixed benefits, regardless of fault and without the need for litigation. *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983).

---

[4] Defendants' filed the motion presently before the Court on March 9, 2011. On March 24, 2011, the Court ordered that Plaintiff shall either file a response and brief in opposition to the motion at ECF No. 19, or file an amended complaint no later than April 11, 2011. (ECF No. 22.) Plaintiff has filed neither an amended complaint, nor a response to Defendants' motion. Plaintiff has requested no further extensions, and the Court decides the motion without benefit of Plaintiff's response.

9

Except for those exclusions noted above, FECA will apply if the injury was suffered in the performance of the employee's duty; it is irrelevant whether the injury was caused by an intentional or negligent act. *McCluskey v. United States*, Civil Action No. 10-694, 2010 WL 4024717, at *4 (W.D. Pa. Oct. 12, 2010) (citing *Farley v. United States*, 162 F.3d 613, 616 (10th Cir. 1998)).

Here, Plaintiff's averments in paragraphs 44-45 of the Complaint suggest FECA coverage. Plaintiff avers that his "initial hospital costs were paid for by the DEA under Workmen's Compensation," and that DEA reimbursed him for his glasses. (ECF No. 3 at ¶¶ 44-45.) Plaintiff further avers that "Drews had promised that DEA would pay all of Plaintiff's medical bills, they did not do so."[5] (ECF No 3 at ¶ 47.) Plaintiff's averments also state that the injuries he allegedly sustained occurred while Plaintiff was working with the DEA "to assist [it] in a controlled buy/bust of a target." (ECF No. 3 at ¶ 1.)[6] Pursuant to the Court's power to determine whether subject matter jurisdiction exists in a factual attack under Federal Rule of Civil Procedure 12(b)(1), the Court also considers Exhibit B to Defendants' brief in support of their motion, and finds that Plaintiff applied for and received workers' compensation benefits to cover the costs associated with his hospital visit and broken glasses. (ECF No. 20-2 at 2-6.) *See*

---

[5] The Secretary of Labor is entrusted with the decision to award benefits and his decision is "final and conclusive for all purposes and with respect to all questions of law and fact; and is not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128 (b). Hence, this Court is without jurisdiction to review the Secretary of Labor's decision regarding Plaintiff.

[6] FECA defines "employee" to include "an individual rendering personal service to the United States similar to the service of a civil officer or employee of the United States, without pay or for nominal pay, when a statute authorizes acceptance or use of the service, or authorizes payment of travel or other expenses of the individual." 5 U.S.C. § 8101 (1)(B). The Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, authorizes the Attorney General, who has delegated this function to DEA, "to pay any person . . . for information concerning a violation of this subchapter . . . ." 21 U.S.C. § 886 (a). Therefore, DEA cooperating sources are federal employees for FECA purposes and are entitled to compensation for personal injuries sustained while in the performance of their duties. 5 U.S.C. § 8102 (a).

*Mortensen,* 549 F.2d at 891 ("[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").[7]

Consequently, Plaintiff's tort claims for assault and battery, intentional infliction of emotional distress, and negligent supervision against the United States, all of which arise out of the September 24, 2008 buy/bust operation, must be dismissed for lack of subject matter jurisdiction, and Defendants' Motion to Dismiss these claims should be granted.

2. *Bivens* claims

In *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971), the United States Supreme Court implied a right of action directly under the Fourth Amendment to the United States Constitution to allow a victim of an unconstitutional search to sue federal officials personally for damages. "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). The United States Supreme Court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in [its] general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331). In order to state a *Bivens* claim, a plaintiff must allege the following: 1) Defendants must have been acting under color of federal law; and 2) Defendants must have

---

[7] The Court's analysis concerning Defendants' factual attack on subject matter jurisdiction does not convert the motion to dismiss into a motion for summary judgment. 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[4] at 12-48 (3d ed. 2010). *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (collecting supporting cases from various jurisdictions) (district court has broader power to decide its power to hear case than it has when merits of case are reached).

caused the plaintiff to be deprived of a right secured by the Constitution and laws of the United States. *Id.*

   a. Official Capacity Claims

Defendants' first *Bivens* argument concerns claims against the individual defendants in their official capacities that such claims are barred by the doctrine of sovereign immunity. In the caption of the Complaint at ECF No. 3, Plaintiff clearly indicates that the individual defendants are being sued in their individual/personal capacities only. Consequently, the Court will not discuss Defendants' initial *Bivens* argument as Plaintiff has unambiguously endorsed his Complaint indicating that all individual Defendants are sued in their individual/personal capacities only. *See Hafer v. Melo*, 912 F.2d 628, 636 n.7 (3d Cir. 1990) (preferable for complaint to specifically identify the capacity in which defendant is being sued), *aff'd,* 502 U.S. 21, 24 n.1 (1991).

   b. Drews and Jimenez

Next, Defendants argue that Plaintiff's *Bivens* claims against Defendants Drews and Jimenez should be dismissed because there are no allegations that they personally participated in the allegedly constitutional conduct, and that therefore, Plaintiff is attempting to hold these Defendants vicariously liable for the actions of others.

A careful review of the Complaint, however, indicates that Plaintiff has alleged numerous actions taken by Defendants Drews and Jimenez relating to the facts and circumstances surrounding Plaintiff's alleged constitutional violations. *See* ECF No. 3 at ¶¶ 9, 10, 30, 32, 38, 39, 77, 107-111, 113-14, 117-18, 120-24, 127-131, 133, 136-143. For instance, Plaintiff alleges that Jimenez, as supervisor, instructed all officers to view Plaintiff and what he was wearing so

that they could identify him during the operation; Jimenez further advised Plaintiff that he would be filming the entire operation. (ECF No. 3 at ¶¶ 9-10.) Plaintiff further avers that after he was tackled by Banovsky, Drews apologized repeatedly to Plaintiff and indicated that they had made a mistake. (ECF No. 3 at ¶ 30.) Further, the Complaint contains numerous allegations that suggest Drews and Jimenez actively participated in attempting to cover-up what had actually transpired during the operation. (ECF No. 3 at ¶¶ 109-126, 127-143.) Consequently, Plaintiff has alleged the personal participation of both these Defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) ("defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Consequently, it is respectfully recommended that Defendants' Motion to Dismiss be denied on this claim.

3. Section 1983 Conspiracy

Defendants also argue that Plaintiff's § 1983 conspiracy claims against the individuals must be dismissed because § 1983 provides a remedy for violations of federal law by persons acting pursuant to state law. Defendants contend that here, they are sued in their individual capacities in connection with actions taken in the course and scope of their federal employment with the DEA, pursuant to federal law, citing *Hindes v. Federal Deposit Ins. Corp.*, 137 F.3d 148, 158 (3d Cir. 1998) ("federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law.").

Defendants arguments concerning 42 U.S.C. § 1983 are correct regarding Plaintiff's § 1983 conspiracy claims. Liberally construing Plaintiff's Complaint, however, the Court

construes Plaintiff's conspiracy claims under *Bivens*.[8] The United States Court of Appeals for the Third Circuit has recognized claims for conspiracy under *Bivens*. *See, e.g.*, *Hodge v. United States Dept. of Justice*, 372 Fed. Appx. 264 (3d Cir. 2010) (per curiam); *Hill v. True*, 142 Fed. Appx. 129 (3d Cir. 2005) (per curiam); *Egervary v. Young*, 366 F.3d 238 (3d Cir. 2004); *Wilson v. Rackmill*, 878 F.2d 772 (3d Cir. 1989).

In order to state a plausible conspiracy claim, a Plaintiff "must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants." *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (other internal citations omitted)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

Within Plaintiff's 146 factual averments of the Complaint, ECF No. 3 at pp. 4-15, he has alleged enough factual matter to plausibly suggest a meeting of the minds between the individual Defendants to cover-up the alleged unconstitutional conduct of Banovsky, specific acts in furtherance of the conspiracy, and the period of the conspiracy. The specific acts in furtherance

---

[8] Defendants have construed Plaintiff's excessive force claim against Banovsky as a *Bivens* claim even though the Complaint specifically invokes § 1983. *See* Defendants' Partial Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 19 at 3 n.1. Defendants have not moved to dismiss Plaintiff's *Bivens* excessive force claim against Defendant Banovsky.

of the conspiracy include the failure to turn over video and audio recordings of the buy/bust operation to investigators, and specific misrepresentations to investigators. Allegations also suggest that sometime before the date of the official investigation, all individual defendants agreed as to what their story to investigators would be to cover for Banovsky's alleged unconstitutional conduct. Plaintiff's averments also indicate that the period of the conspiracy was the duration of the official investigation of the buy/bust operation. Consequently, Plaintiff has averred enough facts to state a plausible claim for relief pursuant to *Twombly* and its progeny, and Defendants' Motion to Dismiss the conspiracy claim should be denied.

4. John Doe Corporate Defendant

Defendants also argue that the John Doe, Inc. corporate defendant should be dismissed because Plaintiff has not shown that it is indispensible to this litigation. (Brief in Support of Defendants' Partial Motion to Dismiss, or in the alternative, for Summary Judgment, ECF No. 20 at 13-14.)

In his Complaint, Plaintiff avers the following:

> f) JOHN DOE is a federal corporation having supervisory responsibility for the actions of all defendants in its employ at the time of the incidents complained about pursuant [to] 28 U.S.C. § 2680(h). Based on information and belief, the DEA agents and the [sic] all other defendants were all either officers or employees of the DEA, or acting on behalf of DEA in official capacities temporarily in service of DEA, working under the direction of Group Supervisors Drews and co-case agent Jimenez.

(Complaint, ECF No. 3 at ¶ f.) Liberally construing Plaintiff's averment at paragraph f, Plaintiff appears to name the DEA as a defendant in this action, although he names it as a John Doe, Inc. defendant in the caption of the case. The law is clear that federal agencies are improper

15

defendants in a *Bivens* action. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994). Consequently, Defendants' Motion to Dismiss the unnamed John Doe, Inc. defendant should be granted.

     5.  Improper Service of Process as to Defendant Barravechio

Defendants contend that the individual federal officers in this *Bivens* action must be served as individuals, and that Defendant Barravechio has not received personal service of the summons and complaint, nor has he been asked to waive personal service. Consequently, Defendants contend that all claims against Barravechio should be dismissed for insufficient service of process. (Brief in Support of Defendants' Partial Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 20 at 14-15.)

Federal Rule of Civil Procedure 4(i)(3) provides as follows:

> **(3) Officer or Employee Sued Individually.** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Federal Rule of Civil Procedure 4(e) provides as follows:

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Finally, Federal Rule of Civil Procedure 4(m) provides in relevant part as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Court takes judicial notice of the docket sheet at 10-CV-1180. At ECF No. 13, the docket sheet reflects that the United States Marshall's Service attempted unsuccessfully to serve Barravechio by Waiver of Service. The docket sheet reflects no further attempts to effectuate service on Barravechio.

In considering Defendants' Motion to Dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), the Court possesses "broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). The United States Court of Appeals for the Third Circuit has emphasized, however, that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiff[] free to effect proper service." *Id.* (citations omitted).

Here, the Court notes that although the 120-day time limit for service has expired pursuant to Federal Rule of Civil Procedure 4(m), the Plaintiff is proceeding pro se. Shortly after the Notice of Inability to Effectuate Service as to Barravechio was filed by the United States

17

Marshall at ECF No. 13, counsel for Defendants filed two (2) Motions for Extension of Time and a Motion to Substitute Party at ECF Nos. 14, 15, & 17, all on behalf of the individual Defendants, including Barravechio.  Consequently, this pro se Plaintiff may have believed that continued attempts to serve Barravechio were unnecessary.  Therefore, Defendants' Motion to Dismiss for Improper Service of Process as to Defendant Barravechio should be denied.  The Court will enter an appropriate Order directing Plaintiff to make service on Defendant Barravechio pursuant to Federal Rule of Civil Procedure 4 within 60 days.  If the Plaintiff fails to effectuate service within 60 days, the Court recommends that the Complaint against Barravechio be dismissed.

### III. CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Defendants' Partial Motion to Dismiss or, in the alternative, for Summary Judgment at ECF No. 19 be granted in part and denied in part.  The Partial Motion to Dismiss is granted as it relates to the tort claims against the United States, and as it relates to the claims against the John Doe corporate defendant.  It is denied as it relates to the claims for supervisory liability against Defendants Drews and Jimenez, conspiracy against all individual Defendants, and improper service of process as to Defendant Barravechio.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and

recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: December 5, 2011

BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: David Nekula
12945 West Rudasill Road
Tucson, AZ 85743
Pro Se

All Counsel of Record
Via Electronic Mail